AIKEN SCHENK HAWKINS & RICCIARDI P.C.
4742 North 24th Street, Suite 100
Phoenix, Arizona 85016-4859
Telephone: (602) 248-8203
Facsimile: (602) 248-8840
D. Lamar Hawkins – 013251
Philip R. Rupprecht - 009288
Christopher R. Chicoine – 025260
E-Mail: dlh@ashrlaw.com
E-Mail: prr@ashrlaw.com
E-Mail: crc@ashrlaw.com
Attorneys for Debtor

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| In re: | Chapter 11 Proceedings |
|---|---|
| KELLY JAMES McINROY, | Case No. 2:10-bk-21290-GBN |
| Debtor. | |
| Address: 5328 N. 42nd Pl. Phoenix, AZ 85018 | **MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL** |
| Soc.Sec.No.: xxx-xx-9340 | |

Kelly James McInroy, debtor and debtor-in-possession herein (the "Debtor"), by and through his attorneys Aiken Schenk Hawkins & Ricciardi P.C., requests this Court enter an order pursuant to Bankruptcy Code section 363 and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure authorizing the use of cash collateral on an interim and final basis. This Motion is supported by the attached Memorandum of Points and Authorities.

DATED this ____ day of August, 2010.

                        AIKEN SCHENK HAWKINS & RICCIARDI P.C.

                        By _____
                          D. Lamar Hawkins
                          Christopher R. Chicoine
                          4742 North 24th Street, Suite 100
                          Phoenix, Arizona 85016-4859
                          Attorneys for Debtors

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1344.

2. This matter constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M).

3. Venue of this proceeding and the Motion is proper in the District of Arizona pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. RULE 9014(b)(1)(B) STATEMENT

4. Kelly James McInroy (the "Debtor"), filed a voluntary petition under Chapter 11 of the Bankruptcy Code on July 8, 2010 (the "Petition Date").

5. The Debtor is managing his assets as debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

6. The Debtor is a single man residing in Maricopa County, Arizona. The Debtor is a fire engineer/paramedic with the City of Glendale. As of the Petition Date, the Debtor had interests in the following residential income properties:

    a. 29585 North 68th Dr., Peoria, Maricopa County, Arizona 85383 (the "68th Drive Property").

    b. 6605 North 93rd Ave., Unit 1056, Glendale, Maricopa County, Arizona 85305 (the "93rd Avenue Property").

7. These properties comprise the majority of the assets of the bankruptcy estate.

8. The Debtor requests court approval to retain the rents generated from the 68th Drive Property and the 93rd Avenue Property (together, the "Rental Properties") in order to fund their operating expenses.

9. The Debtor will allocate the cash derived from the Rental Properties pursuant to itemized net profit/loss statements (the "Operating Budgets"). True and correct copies of the

Operating Budgets are attached hereto as Exhibit A. The Operating Budgets clearly show that every dollar of rent will be spent on necessary operating expenses and/or debt servicing. The Debtor will use the rents to pay all operating expenses first and thereafter hold the balance in the debtor-in-possession account until the Debtor can resolve the treatment of the secured creditors by stipulation or other court order.

10. Bank of America and PNC Mortgage (collectively the "Banks") may claim a security interest in the Rental Properties, as well as an "interest" in cash collateral pursuant to §363.[1] The Debtor believes that PNC Mortgage holds a first position claim on the 68th Drive Property and that Bank of America holds first and second position claims on the 93rd Avenue Property.

11. The Debtor's proposed use of cash collateral will provide for the cash collateral to be reinvested in Rental Properties to stabilize and/or enhance of the value of the sale.

12. The Banks are adequately protected by Debtor's proposed use of the cash collateral.

### III. POINTS AND AUTHORITIES

Section 363 of the Bankruptcy Code permits the use of cash collateral upon an interested party's consent or a finding of adequate protection after notice and a hearing. 11 U.S.C. §§ 363(c) and (e). Section 361 fails to give a definition of "adequate protection', nonetheless, bankruptcy courts have offered substantial guidance regarding the meaning of such phrase.

### A. Debtors' Proposed Use of Cash Collateral For Utilities, Maintenance and Repairs Will Adequately Protect the Banks.

A large number of bankruptcy courts have found adequate protection where cash collateral is used to maintain and preserve the property subject to an objecting creditor's lien. See Principal Mutual Life Insurance Co. v. Atrium Development Co. (In re Atrium) 159 B.R. 464, 471 (Bankr. E.D. Va. 1993) ("Adequate Protection is typically established by the fact that the cash is being used

---

[1] The Debtor has yet to determine the validity, priority, enforceability and/or extent of the claimed liens and, therefore, the Debtor takes no position regarding the same, but all claimed liens are valid for the sole purposes of this Motion. Secured Creditors have the burden of proof to establish validity of their purported "interests" in cash collateral under §363(p)(2).

3

to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security interest"); see also In re 499 W Warren Street Associates, Ltd. Partnership, 142 B.R. 53, 56 (Bankr. N.D.N.Y 1992) (citing Hartigan v. Pine Lake Village Apartment Co. (In re Pine Lake Village Apartment Co.) 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982); see also In re Princeton Square Assocs., 201 B.R. 90-96 (Bankr. S.D.N.Y. 1996) ("[T]his court concludes that no monetary protection is required to be provided by the debtor in possession to the secured creditor to the extent that the rents are applied for the maintenance of the property in the manner a receiver would apply the rents."). Another bankruptcy court noted:

> "the application of rent income solely to maintain and repair the property as to prevent further deterioration will enhance the value of the property which serves as the collateral for plaintiff-mortgagee's interest. The protection and maintenance of plaintiff-mortgagee's collateral, without diversion of funds to the debtor, clearly ensures that the plaintiff-mortgagee's investment is adequately protected."
> In re Pine Lake Village Apartment Co. 16 B.R. at 756

In re McCombs, 88 B.R. 261 (C.D. Cal. 1988) similarly concluded:

> "Use of the cash collateral for needed repairs and renovations should actually result in increased rentals. Debtor has committed to use the cash collateral to pay operating expenses and improve and maintain the Property with any excess income going to First Texas. By dedicating cash collateral for these purposes, debtor has substantially eliminated the risk of diminution of First Texas' interest in cash collateral."

Here, the Banks are adequately protected by the Debtor's proposed use of the rent proceeds. The rents will be used to fund payments for operating expenses such as utilities, maintenance and recurring repairs. As the above case law suggests, the Debtor's proposed use of the rents alone should suffice as adequate protection for the Banks.

B.  **The Banks Are Adequately Protected by Stable Asset Values**.

"Adequate protection is provided to safeguard the creditor against depreciation in the value of its collateral during the reorganization process." First Federal Bank of California v. Weinstein (In re Weinstein) 227 B.R. 284, 296 (9th Cir. BAP 1998)(citing Paccom Leasing Corp. v. Deico Elecs., Inc. (In re Deico Elecs., Inc.), 139 B.R. 945, 947 (9th Cir. BAP 1992)). Accordingly, adequate

protection should be found where the values of assets securing the collateral are stable. See In re Mullen, 172 B.R. 473, 477 (Bankr. D. Mass. 1994)("Most courts hold no adequate protection payments was necessary when the property's value remains constant.")(citing In re IPC Atlanta Limited Parntership, 142 B.R. 547 (Bankr. N.D. Ga. 1992)); see also Chase Manhattan Bank USA, N.A. (In re Stembridge) 394 F.3d 383, 387 (5th Cir. 2004)(adequate protection measured by decline in value of collateral); see also In re Beker Industries Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y.1986)(adequate protection "focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process.").

Furthermore, the value of the collateral should be measured by the stream of rent income and, therefore, steady rent constitutes adequate protection of the collateral. See Mullen, 172 B.R. at 478. Mullen concluded:

> "The value of the Debtor's properties is therefore based upon their rental incomes. As a result, so too is the value of [creditor's] mortgage interest...***The value of the mortgage interest is not declining because rents are not declining.*** Consumption of those rents has no adverse effect upon the mortgage value. Indeed, it has a positive affect. If the rents were not used to pay for management, taxes and maintenance of the properties, the value of [creditor's] mortgage interest would rapidly decline." Id. (emphasis added).

Here, the Banks are adequately protected by the stability of the value of the collateral securing their liens since the rent revenues are projected to remain consistent over at least the next six months. Second, as previously indicated, the Debtor essentially proposes to reinvest the rents back into the Rental Properties which will stabilize, if not enhance, the value of the collateral. This Court should grant the Motion on these grounds alone.

### C. Adequate Protection Does Not Include The Banks' Lost Interest or Opportunity Costs.

Under no circumstance does adequate protection include the lost interest or lost opportunity costs incurred from a secured creditor's delay in the realization of collateral. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd. 484 U.S. 365, 108 S.Ct. 626 (1988)("interest"

entitled to adequate protection does not include the right to immediately foreclose on the collateral and, therefore, creditor has no right to interest from delay in realizing the collateral.); see also In re Weinstein 227 B.R. 284, 296 (9th Cir. BAP 1998)("adequate protection payments cannot be used to compensate the creditor for lost interest or to provide lost opportunity costs"); see also In re Cantrup 32 B.R. 1004, 1005 (Bankr. D.Colo 1983) (Congress did not intend to include payments to undersecured creditors for the loss of the use of their money resulting from the automatic stay under § 362."); see also Production Credit Assoc'n v. Pullins (In re Pullins) 65 B.R. 560, 563 (Bankr. S.D.OH 1986) (Undersecured creditor was not entitled to be compensated, in form of "adequate protection" payments, for money it could earn by foreclosing on its collateral and reinvesting proceeds). To reiterate, another Ninth Circuit bankruptcy court noted:

> "there is no entitlement to cash payments, replacement liens, or other methods of adequate protection to compensate the creditor for lack of access to the collateral for the period of time foreclosure is forestalled due to the automatic stay or for loss of the use of the money it would have been able to receive on liquidation of its collateral, often called "opportunity costs." In re Sun Valley Ranches, Inc. 38 B.R. 595, 597 (Bankr.Idaho1984)

Here, per Timbers, none of the Banks are entitled to receive adequate protection payments in the form of reimbursement for lost interest income or opportunity costs from the delay in realizing any of the Collateral. This should also prove to be a moot issue since, if the Motion is granted, the Debtor intends to perform under his Plan obligations and, accordingly, there will likely be no such need for any of the Banks to pursue state law remedies in the Collateral.

### III. CONCLUSION

The Debtor requests this Court grant his Emergency Motion to Use Cash Collateral. The Banks are adequately protected under §361 in several ways. First, the values of the collateral securing Banks' interests are stable. Rents are steady and will hopefully increase throughout the life of the Plan. In addition, the Debtor will use the rent proceeds to reinvest in the Rental Properties. The rents will be used to pay operating expenses, and the balance will be kept in a separate debtor-in-possession account until the treatment of the secured creditors' claims is resolved by stipulation

or other court order. This alone would support this Court's finding of adequate protection per Warren Street, Pine Lake or McCombs.

This Court should grant the Motion.

WHEREFORE, the Debtor respectfully requests:

1. Entry of an order authorizing use of cash collateral in accordance with the Operating Budgets attached as Exhibit A.

2. Granting such other relief as the Court deems just and proper.

DATED this ____ day of August, 2010.

AIKEN SCHENK HAWKINS & RICCIARDI P.C.

By _____
D. Lamar Hawkins
Christopher R. Chicoine
4742 North 24th Street, Suite 100
Phoenix, Arizona 85016-4859
Attorneys for Debtors

COPY of the foregoing mailed, or served
via electronic notification* or fax** or if so marked,
this _17_ day of August, 2009, to:

Office of the U.S. Trustee * USTPRegion14.PX.ECF@USDOJ.GOV
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706

Mark Bosco * msb@tblaw.com
TIFFANY & BOSCO P.A.
2525 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
Attorney for: PNC Bank, N.A.

J. Scott Dutcher ** dutchers@mail.maricopa.gov
Maricopa County ** GLS_Court_Minute_Entries@mail.maricopa.gov
Office of General Litigation Services
301 W. Jefferson St., Suite 3200
Phoenix, AZ 85003
Attorney for Maricopa County

Bank of America ** 1-336-805-1826
BAC Home Loans Servicing
PO Box 515503
Los Angeles, CA 90051-6803

| | |
|---|---|
| 1 | Bank of America |
| 2 | BAC Home Loans Servicing<br>PO Box 515504 |
| 3 | Los Angeles, CA 90051-6804 |
| 4 | Bank of America Home Loans<br>PO Box 10221 |
| 5 | Van Nuys, CA 91410-0221 |
| 6 | _[signature]_ |

S:\McInroy.K\20106001\Pleadings\MotCashColl.doc

8

# Kelly McInroy
# Monthly Income Worksheet

## 29585 N. 68th Dr.
## Peoria, AZ  85383

| | | |
|---|---|---|
| **Gross Rental Income:** | $1,400 | (estimated) |
| **Operating Expenses:** | | |
| HOA | $45 | |
| Repairs | $50 | (approximate) |
| Cleaning | $40 | |
| Utilities | $280 | |
| Pool | $ N/A | |
| Landscaping | $75 | |
| **Total Operating Expenses:** | **$490** | |
| | | |
| **Mortgage Expenses:** | | |
| PNC Mortgage | $2,394.50 | |
| Taxes & insurance included. | | |
| | | |
| **Total Debt Service:** | **$2,3494.50** | |

# Kelly McInroy
## Monthly Income Worksheet

### 6605 N. 93rd Avenue Unit 1056
### Glendale, AZ  85305

| | | |
|---|---|---|
| **Gross Rental Income:** | $1,500 | (estimated) |

**Operating Expenses:**

| | | |
|---|---|---|
| HOA | $220 | |
| Repairs | $ 25 | (approximate) |
| Cleaning | $ 25 | |
| Utilities | $210 | |
| Pool | $ N/A | |
| Landscaping | $ N/A | |
| Annual Property Advertisement ($300/yr ÷ 12) | $25 | |
| **Total Operating Expenses:** | **$505** | |

**Mortgage Expenses:**

| | | |
|---|---|---|
| Bank of America (1st) Taxes & insurance included. | $1,858.85 | |
| Bank of America (HELOC) | $ 200.00 | (approximate) |
| **Total Debt Service:** | **$2,058.85** | |